## SLEEPER vs. VAN MIDDLESWORTH.

The principle that the existence of a person, a personal relation, or a state of things, once established by proof, is presumed to continue the same until the contrary is shown, is applicable, within reasonable limits, to the character of a witness proved to have once sustained a bad reputation for truth and veracity.

Therefore *held* that the character of a witness may be impeached by persons in whose neighborhood he had lived until four years prior to the trial, though he had then removed to another place fourteen miles from that neighborhood, where he had since resided, and the witnesses did not know the character which he bore at the latter place.

ERROR to the Livingston common pleas. Sleeper sued Van Middlesworth in assumpsit, and the cause was tried in the common pleas on appeal from a justice's court. In the course of the trial the defendant called and examined one Post as a witness, who gave material testimony. The plaintiff called witnesses to impeach his general character, but it appeared that they lived a distance of fourteen miles from the then residence of Post, though he had formerly resided in their neighborhood. They testified that they knew the character he sustained when he lived near them, but not that which he bore in the neigh-

Sleeper *v.* Van Middlesworth.

borhood where he then lived, and that he removed to the latter place about four years before the trial. One of the witnesses said he had heard his character spoken of within a year, and another within four months. The plaintiff offered to examine these witnesses as to Post's general character, with a view to prove it to be bad. The defendant objected on the ground that they had not such a knowledge of his general character as would qualify them to testify on the subject. The objection was sustained and the testimony of the impeaching witnesses excluded. The plaintiff excepted and the defendant had a verdict and judgment. The plaintiff brought error on a bill of exceptions.

*S. Lord,* for the plaintiff in error.

*G. Hastings,* for the defendant in error.

*By the Court,* BEARDSLEY, J.   At the time of the trial the witness, Post, lived in the town of Genesee, where he had re- sided for nearly four years. He is spoken of as a young man, but nothing more definite as to his age, appears in the bill of exceptions. The question to be determined is whether the witnesses called to impeach his character were shown to be competent to speak on that subject. They were not from the neighborhood where he then resided, but came from a distance of about fourteen miles : nor had they any acquaintance in his neighborhood—his reputation at that place and while he had resided there, being wholly unknown to them. They had, however, known Post before his removal to Genesee, and while he lived in their neighborhood; and they knew, and could speak of the character he then sustained at that place.

It is necessary to ascertain distinctly what this objection was, and what it was not. And in the first place it was not that the witnesses were asked to speak upon particular acts instead of general reputation : nor was it, that their knowledge of that reputation at the time to which their evidence would have refer- ence, was so limited, or of such a nature, as to forbid their

Sleeper *v.* Van Middlesworth.

speaking at all on the subject. The objection made was altogether different. In effect it was, that the character of the witness, Post, whatever it might have been, four years before the trial, was an irrelevant fact; and whether it was at that time good or bad, could, for no purpose, be material to inquire.

In speaking to the question of character witnesses are never restricted to the precise time when their testimony is given. The nature of the inquiry precludes this, for the evidence must necessarily refer to reports and reputation of which a knowledge had been acquired before the witness came to the stand. To what period of time shall the inquiry be restricted? Shall it be to a day, a week, or a month? All will agree that either would be too short, and that the inquiry may be pushed further. It certainly might be extended to several months, or a year preceding the trial, and I do not see that it should be even thus limited. Perhaps the character of the witness for the last year would afford more convincing evidence of the credit which his statements should receive, than his reputation four years earlier. Still, the evidence for the entire period is of the same grade and nature; and although that which points to the earlier period may be less cogent in its influence on the jury, it may, notwithstanding, afford some just ground for estimating the worth of what has been stated by the witness.

It might be too much to say that a character, when once formed, is presumed to remain unchanged for life. Still, the law, founded on a full knowledge and just appreciation of the general course of human affairs, indulges a strong presumption against any sudden change in the moral as well as the mental and social condition of man. When " the existence of a person, a personal relation or a state of things, is once established by proof, the law presumes, that the person, relation or state of things, continues to exist as before, till the contrary is shown, or till a different presumption is raised, from the nature of the subject in question." " The *opinions,* also, of individuals once entertained and expressed, and the *state of mind* once proved to exist, are presumed to remain unchanged, till the contrary appears." Thus, a person proved once to have existed, is

within certain limits, presumed still to exist. A partnership once established will be assumed to continue; and where derangement, or imbecility of mind, has been shown, its continuance is, in like manner, presumed until the contrary is proved. (1 *Greenl. Ev.* §§ 41, 42; *Best on Presump. of Law and Fact,* § 136; *Stark. Ev.* 937, *Phil. ed.* 1842.)

The principle on which the presumption in such cases rests, has, it seems to me, a strong application to the question now before the court. It is not, looking to common experience in human conduct, generally found to be true, that a thorough change from a bad to a good character, is wrought within four years. It may, and it is to be hoped often does occur; but such is not the common course in life. On the contrary, there is a strong probability that one, whose general character was bad four years since, is still of doubtful or disparaged fame. So much, at least, may be asserted, without evincing the feeling of a misanthropist or any unseemly lack of charity. It appears to me, therefore, that the court erred in rejecting this evidence. Had it shown the character of the witness, Post, to have been bad four years before the trial, it ought to, and would, have influenced the jury, unless evidence of a thorough renovation of character since that time had been given.

He was said to be a young man, forming a character, and therefore it is urged that it would be unjust to look back into his life for such a period, to discover blemishes which may since have been obliterated. And it is surely to be hoped that such was the fact. Still, the offer was to show that four years before the trial, the witness had already acquired a well known character in the community where he resided. His age, therefore, seems hardly of much moment in this case.

No certain limit, in point of duration, can be laid down for inquiries like this. The impeaching party is not restricted, in his evidence, to the present time, but may look to the past. And it is only necessary to say here, that the law does not absolutely shut out, as immaterial, an inquiry into the character of the witness four years before the trial.

Had it even appeared that his reputation, since that time,

was above all reproach, I still think the inquiry might have been pushed beyond that time, although prudent counsel, in such a case, would hardly have dared to venture on the experiment. Here, however, nothing had been shown as to the character of this witness at any time. The attacking party chose to say I will prove the character of the witness to have been bad four years since. It may be that it was intended to follow it up by showing what his present reputation was, although this was not avowed. The court held that an attack, directed at the character of the witness four years before the trial, was too remote, and could not be allowed. In this the court erred, and the judgment should be reversed.

Judgment reversed.